FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 10, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHEENA H.,[1] | No. 4:20-cv-05198-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| Defendant. | **ECF Nos. 21, 23** |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment.  ECF Nos. 21, 23.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 21, and denies Defendant's motion, ECF No. 23.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

ORDER - 2

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §§ 404.1502(a), 416.902(a). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous

ORDER - 3

work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

ORDER - 4

a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 5, 2018, Plaintiff applied both for Title II disability insurance benefits and Title XVI supplemental security income benefits alleging a disability onset date of July 1, 2017.  Tr. 15, 116-17, 247-61.  The applications were denied initially and on reconsideration.  Tr. 152-55, 158-63.  Plaintiff appeared before an

ORDER - 6

1  administrative law judge (ALJ) on October 29, 2019.  Tr. 37-87.  On May 7, 2020,

2  the ALJ denied Plaintiff's claim.  Tr. 12-34.

3        At step one of the sequential evaluation process, the ALJ found Plaintiff,

4  who met the insured status requirements through September 30, 2023, has not

5  engaged in substantial gainful activity since July 1, 2017.  Tr. 17.  At step two, the

6  ALJ found that Plaintiff has the following severe impairments: borderline

7  personality disorder; major depressive disorder; generalized anxiety disorder;

8  degenerative disc disease of the lumbar spine with right sacroiliac pain; right

9  shoulder impingement, recurrent; migraine headaches; and fibromyalgia.  Tr. 18.

10       At step three, the ALJ found Plaintiff does not have an impairment or

11  combination of impairments that meets or medically equals the severity of a listed

12  impairment.  *Id.*  The ALJ then concluded that Plaintiff has the RFC to perform

13  sedentary work with the following limitations:

> [Plaintiff] can never crawl or climb ladders, ropes, or scaffolds but
> can occasionally climb ramps and stairs, balance, stoop, kneel, and
> crouch.  She should avoid reaching overhead with her right upper
> extremity, unprotected heights, hazardous machinery, and exposure to
> heavy industrial vibrations.  She can perform simple, repetitive tasks
> with some detail involved.  She could have occasional contact with
> coworkers and supervisors but she [should] avoid tandem tasks.  She
> could not perform at fast-paced production work and should avoid
> working with the general public.  Finally, only occasional changes in
> the work setting could be tolerated.

Tr. 20.

ORDER - 7

At step four, the ALJ found Plaintiff is capable of performing her past relevant work as an office helper and a data entry clerk.  Tr. 26.  Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as assembler, in various industries.  Tr. 28.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of July 1, 2017, through the date of the decision.  *Id.*

On August 21, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-three analysis;

2.  Whether the ALJ properly evaluated the medical opinion evidence;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4.  Whether the ALJ conducted a proper step-four and step-five analysis.

ORDER - 8

ECF No. 21 at 7.

# DISCUSSION

## A. Step Three

Plaintiff contends the ALJ erred by failing to find her impairments meet or equal Listing 1.04A or Listing 14.09D.  ECF No. 21 at 14-18.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. §§ 404.1525, 416.925.  "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy,* 738 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

ORDER - 9

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 404.1525(d), 416.925(d). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Id*. However, "'[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.'" *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical

ORDER - 10

equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

The ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listing 1.04A.  Tr. 18. In order to meet Listing § 1.04A, a claimant must establish: (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (2) limitations of motion of the spine; (3) motor loss ("atrophy with associated muscle weakness or muscle weakness") accompanied by sensory or reflex loss, and (4) if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[3]  *Gnibus v. Berryhill*, No. 2:15-CV-1669 AC, 2017 WL 977594, at *4 (E. D. Cal. March 13, 2017) (finding Listing 1.04A was met) (citing *Sullivan*, 493 U.S. at 530) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").  Further, Plaintiff must establish the impairment satisfies the 12-month durational requirement. *Gnibus*, No. 2:15-CV-1669 AC, 2017 WL 977594, at *7 (internal citations

---

[3] As of April 2, 2021, Listing 1.04 was removed and replaced with Listing 1.15. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (April 2, 2021).  The Court applies the Listing that was in effect at the time of the ALJ's decision.

omitted).  While Plaintiff argues the impairment need not be of listing-level severity for a 12-month duration, ECF No. 21 at 12, this is inconsistent with the regulations, *see* Revised Medical Criteria for Evaluating Musculoskeletal Disorders 85 FR 78169 (December 13, 2020).

Dr. Smiley testified that he thought Plaintiff met the requirements of Listing 1.04A in October 2018, but she improved and no longer met the listing by May 2019.  Tr. 49-50.  Dr. Smiley did not give an opinion as to when Plaintiff first met the listing, because he stated, "I don't know whether she was that bad for 12 months or not," and thus there was insufficient evidence to support a finding Plaintiff met the listing for 12 months.  Tr. 54.

First, Listing 1.04A requires a spine disorder that involves compromise of a nerve root or the spinal cord.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A.  Imaging in 2017 and 2018 satisfied this requirement.  In June 2017, a CT showed a disc abnormality at L5-S1, with "potential compromise of the exiting left L5 nerve root."  Tr. 497.  In September 2017, an MRI documented multiple abnormalities, including mild compression of the exiting left L5 nerve root.  Tr. 497.  In September 2018, an MRI documented minimal disc protrusion, with moderate neural foraminal narrowing, but the records note "no significant abutment of the exiting nerve roots," while Dr. Smiley testified the 2018 imaging documented nerve impingement.  Tr. 45, 674, 929.  In May 2019, an MRI documented multiple

ORDER - 12

abnormalities, including narrowing at L3-L4 with possible impingement of the left L4 nerve root, and moderate neural foraminal stenosis with possible impingement of the left L3 and L5 nerve roots.  Tr. 1020.

Second, Listing 1.04A requires neuro-anatomic distribution of pain.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A.  Plaintiff had radicular lumbar pain and tenderness at appointments from 2017 through 2018.  Tr. 538, 656, 854.  Plaintiff's recurrent pain required recurrent injections.  Tr. 538, 588, 656.  Radicular pain has been found to satisfy the requirement of neuro-anatomic distribution of pain. *Gnibus*, No. 2:15-CV-1669 AC, 2017 WL 977594, at *5 (citing *Greene v. Colvin*, 999 F. Supp. 2d 845, 847 (E.D.N.C. 2014)).

Next, Listing 1.04A requires limitation of motion of the spine.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A.  Plaintiff has exhibited painful and decreased range of motion of the lumbar spine, beginning prior to the alleged onset date and continuing through 2018.  Tr. 443, 488, 510, 529.  Next, Listing 1.04A requires motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A. Plaintiff reported decreased sensation in her right lower extremity on multiple occasions.  Tr. 477, 487-88.  In June 2017, Plaintiff had weakness of toe extension on the right.  Tr. 439.  In December 2017, a sensory examination documented decreased sensation from the right knee down and Plaintiff had difficulty walking

ORDER - 13

on toes and heels, and a "sensory deficit" was noted in June 2018.  Tr. 529, 587.

Plaintiff had abnormal reflexes and gait in August 2017, abnormal gait in

September 2017, decreased sensation and reflexes in September 2018, and

abnormal reflexes, strength, and gait, including "significant right foot and toe

drop" in November 2018.  Tr. 477, 488, 665, 852-54.  An EMG completed prior to

the alleged onset date is noted in the records, which reportedly documented

abnormal findings in Plaintiff's right lower extremity.  Tr. 487, 530.

Lastly, if there is involvement of the lower back, Listing 1.04A requires

positive supine and sitting straight leg raise tests.  20 C.F.R. Pt. 404, Subpt. P,

App. 1, 1.04A.  Plaintiff had a positive straight leg raise on the right in July 2017, a

positive supine straight leg raise test on the right, but negative supine straight leg

raise test in August 2017, a positive supine straight leg raise test on the right in

September 2017, a positive straight leg raise test in December 2017, and a positive

straight leg raise test in September 2018.  Tr. 470, 477, 496, 529, 665.

Dr. Smiley discussed Plaintiff's 2018 MRI and 2019 MRI but did not

discuss the 2017 MRI.  Tr. 45.  Dr. Smiley agreed that the 2017 CT scan

documented potential compromise of the exiting left L5 nerve root, which could be

the beginning of the severe findings seen in 2018.  But he stated there is a question

of whether the symptoms were as bad in 2017.  Tr. 55.  When Plaintiff's counsel

noted positive straight leg raise tests and decreased sensation and strength in 2017,

Dr. Smiley stated the testing was subjective.  Tr. 55-56.  Dr. Smiley testified, "1.04A requires and what . . . proper definition of radiculopathy requires is not subjective motor weakness, but measurable motor actual atrophy."  Tr. 56.  This is an inaccurate statement, as the listing requires "motor loss (atrophy with associated muscle weakness **or** muscle weakness)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A [emphasis added].  The listing states, "[i]nability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss."  20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00E1.  The listing therefore does not require actual atrophy.  Further, despite Dr. Smiley's statement that testing including the straight leg raise test is subjective, such testing is explicitly required by the listing and Dr. Smiley's opinion of the subjective nature of the testing has no bearing on whether Plaintiff meets or equals the listing.

Dr. Smiley stated that Listing 1.04A cannot be met with normal neurologic examinations, and while Plaintiff had nerve impingement and abnormal neurological exams in 2018, Plaintiff's exams were normal by May 2019, and the 2019 imaging showed no obvious nerve root impingement, although Plaintiff continued to have some abnormalities on exam and imaging.  Tr. 45-46, 49-51. However, as discussed *supra,* Dr. Smiley failed to address the 2017 MRI, and did not address the multiple abnormal findings related to the listing that were cited to

by Plaintiff's counsel.  Dr. Smiley's analysis of the medical evidence as it relates

to Listing 1.04A was insufficient.  The ALJ found Dr. Smiley's testimony was

persuasive, Tr. 24-25, however the ALJ erred in relying on Dr. Smiley's testimony

when the testimony failed to address evidence that could support a finding Plaintiff

met or equaled Listing 1.04A for at least a 12-month portion of the relevant

adjudicative period.

The ALJ's analysis of Listing 1.04A acknowledges the imaging that

documents the required nerve root compression, but states the imaging

demonstrated Plaintiff had improvement by May 2019, and the examinations were

fluctuating regarding spinal range of motion and motor loss accompanied by

sensory of reflex loss.  Tr. 18-19.  Later in the decision, the ALJ noted Plaintiff's

examinations were generally unremarkable for significant deficits.  Tr. 22 (citing

Tr. 487, 587, 653, 852-54).  However, the cited records do not support the ALJ's

contention.  Two of the records give a history or list of diagnoses and document

Plaintiff's reports of some improvement with treatment, but do not contain

examination findings.  Tr. 487, 653.  Even with the reported improvement with

treatment, Plaintiff also reported weakness, impaired gait, pain, and urinary stress

incontinence.  Tr. 653.  At one cited exam, Plaintiff had normal reflexes, but four

out of five strength in the right lower extremity, and a sensory deficit on

1  examination.  Tr. 587.  At the other cited exam, Plaintiff had abnormal strength

2  and reflexes, an antalgic gait, and marked tenderness.  Tr. 852-54.

3      Plaintiff has presented a reasonable argument that her impairments met or

4  equaled Listing 1.04A for at least a 12-month duration, and the ALJ's analysis fails

5  to discuss the multiple pieces of evidence that support Plaintiff's argument.  While

6  the ALJ reasonably noted that Plaintiff's symptoms varied over time, an ALJ must

7  consider all the relevant evidence in the record and may not point to only those

8  portions of the records that bolster his findings.  *See, e.g., Holohan v. Massanari*,

9  246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively

10  rely on some entries in plaintiff's records while ignoring others).  The ALJ is not

11  permitted to selectively choose from mixed evidence to support a denial of

12  benefits.  *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014).  The ALJ

13  erred in failing to address the evidence which conflicts with the conclusion that

14  Plaintiff does not meet or equal Listing 1.04A.  *See Critoph v. Berryhill*, No. 16-

15  CV-00417, 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (quoting *Cardillo*

16  *v. Colvin*, No. 16-CV-134, 2017 WL 1274181, at *4 (N.D.N.Y. Mar. 24, 2017)));

17  *see also Szarowicz v. Astrue*, No. 11-CV-277S, 2012 WL 3095798, at *5

18  (W.D.N.Y. July 30, 2012) ("It is particularly important for an ALJ to specifically

19  address conflicting probative evidence with respect to the step three analysis,

20  because a claimant whose condition meets or equals that of a [l]isting is deemed

disabled per se and eligible to receive benefits.").  *See Riddick v. Saul*, 20-CV-5396 (AMD), 5-6 (E.D.N.Y. Mar. 15, 2022).

Accordingly, the case is remanded for the ALJ to perform a new step-three analysis, including taking new medical expert testimony.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in her consideration of the opinions of John Nance, Ph.D.; Robert Smiley, M.D.; and Ralph Laraiso, D.O.  ECF No. 21 at 9-14.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s) . . . ."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment,

ORDER - 18

frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions

ORDER - 19

or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit recently addressed the issue of whether the changes to the regulations displace the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion.  *Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th Cir. Apr. 22, 2022).  The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies.  *Id.* at *3-4.  The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  *Id.* at *6.  However, the ALJ is not required to make specific findings regarding the relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent.  *Id.*

ORDER - 20

As the case is being remanded for the ALJ to reconsider the step three analysis, which necessitates taking new medical expert testimony and considering the new medical opinion, the ALJ is also instructed to reconsider the other medical opinion evidence.

## C. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 21 at 18-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

ORDER - 21

1  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

2  omitted).  General findings are insufficient; rather, the ALJ must identify what

3  symptom claims are being discounted and what evidence undermines these claims.

4  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

5  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

6  explain why it discounted claimant's symptom claims)).  "The clear and

7  convincing [evidence] standard is the most demanding required in Social Security

8  cases." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec.*

9  *Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

10        Factors to be considered in evaluating the intensity, persistence, and limiting

11  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

12  duration, frequency, and intensity of pain or other symptoms; 3) factors that

13  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

14  side effects of any medication an individual takes or has taken to alleviate pain or

15  other symptoms; 5) treatment, other than medication, an individual receives or has

16  received for relief of pain or other symptoms; 6) any measures other than treatment

17  an individual uses or has used to relieve pain or other symptoms; and 7) any other

18  factors concerning an individual's functional limitations and restrictions due to

19  pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

20  404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

1  an individual's record," to "determine how symptoms limit ability to perform

2  work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

3      The ALJ found that Plaintiff's medically determinable impairments could

4  reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

5  statements concerning the intensity, persistence, and limiting effects of her

6  symptoms were not entirely consistent with the evidence.  Tr. 21.

7      The ALJ's evaluation of Plaintiff's symptom claims, and the resulting

8  limitations relies largely on the ALJ's assessment of the medical evidence.  Having

9  determined a remand is necessary to readdress the step three analysis, which

10 necessitates reconsidering the medical source opinions, any reevaluation must

11 entail a reassessment of Plaintiff's subjective symptom claims.  Thus, the Court

12 need not reach this issue and on remand the ALJ must also carefully reevaluate

13 Plaintiff's symptom claims in the context of the entire record.  *See Hiler v. Astrue*,

14 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for

15 the reasons stated, we decline to reach [plaintiff's] alternative ground for

16 remand.").

17 **D. Step Four and Step Five**

18     Plaintiff contends the ALJ erred at steps four and five by failing to call a

19 vocational expert at the hearing and relying on the vocational expert's response to

20 an incomplete hypothetical.  ECF No. 21 at 20-21.  The ALJ's hypothetical must

ORDER - 23

be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. As the case is being remanded for the reasons discussed *supra*, the ALJ is also instructed to reconsider the step four and step five analyses.

**E. Remedy**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 21 at 21.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three

ORDER - 24

1  conditions are met. *Garrison,* 759 F.3d at 1020 (citations omitted).  Under the

2  credit-as-true rule, where (1) the record has been fully developed and further

3  administrative proceedings would serve no useful purpose; (2) the ALJ has failed

4  to provide legally sufficient reasons for rejecting evidence, whether claimant

5  testimony or medical opinion; and (3) if the improperly discredited evidence were

6  credited as true, the ALJ would be required to find the claimant disabled on

7  remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874

8  F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

9  the Court will not remand for immediate payment of benefits if "the record as a

10 whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759

11 F.3d at 1021.

12      Further proceedings are necessary in this case.  While Plaintiff presents a

13 reasonable argument, supported by medical evidence, that her impairments met or

14 equaled Listing 1.04A for at least a portion of the relevant period, and the ALJ

15 failed to address evidence pertinent to the step three analysis, medical expert

16 testimony is necessary.  The medical records are not clear as to when Plaintiff's

17 impairments may have met or equaled the listing, due to the varying nature of

18 Plaintiff's symptoms, and her periods of improvement with treatment.  As

19 discussed *supra,* Dr. Smiley did not give an opinion as to when Plaintiff first met

20 the requirements of Listing 1.04A, nor did he give a concrete answer as to when

she stopped meeting the requirements.  Thus, the case is remanded for further

proceedings consistent with this order.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is not supported by substantial evidence and free of harmful legal

error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as

Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 23**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

REVERSING and REMANDING the matter to the Commissioner of Social

Security for further proceedings consistent with this recommendation pursuant to

sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to

counsel, and **CLOSE THE FILE.**

DATED August 10, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 26